We'll move on to the second case today. Horne v. Electric Eel Manufacturing, number 19-2082. And we'll hear first from Ms. Bartolucci. Thank you, Your Honors. May it please the Court and Counsel. Your Honors, as you know, this case is not a breach of contract case. It's a tort case. But Home Depot raised the release and exculpatory provisions of its contract as affirmative manner to avoid the allegations of plaintiff's complaints, and so that has become one of the primary issues in the case and calls upon the Court to analyze those provisions. Before we dive into the merits, Ms. Bartolucci, looking in the appendix, I did not find the judgment that you're appealing from as required in Circuit Rule 30A. Oh, Your Honor, I do believe we did include that in our I believe it started at A38, document 186, A38. I see an opinion. I don't see the judgment. Oh, you may be correct, Your Honor. We may not have included the judgment in the appendix. It's a violation of the rules. It's important, not in this case, but because of, let's say, the reason that the rule is in place is because sometimes people take appeals from non-final orders, non-final or final judgments that appear to be final, that were intended to be final, but don't address all the claims or all the parties. So we will note the violation but move on to the merits. Thank you, Your Honor. You have a final judgment. Where in the district court did you preserve an argument that Home Depot bore the burden of persuasion on the issue of its performance of the contract? Well, he did bear the burden of persuasion on summary judgment as a whole and then he did raise multiple times the fact question of what condition the machine was in when it was provided to him and that condition was the critical promise in the contract between the parties. So to that extent, I mean, plaintiff in responding to the summary judgment motion of Home Depot did assert that it had failed to provide A, the machine that was identified in the contract, but B, a machine in good working condition. There were quite a few assertions of fact and argument regarding the condition of the machine itself. So I believe that preserved the question of whether Home Depot had the, and plaintiff did argue, plaintiff had potentially materially breached the contract. So did it have the right to enforce its exculpatory provisions? That was fleshed out in the question kind of on that point and where you started a bit. So I think your description aligns exactly with the way I read the case, that Home Depot held up the exculpatory clause in defense of the tort claim, right? And as I read the briefs though, one of the points that you're making is that Home Depot can't prevail with its reliance upon the exculpatory clause because this machine here was not in good working order at the time it was supplied, you know, to your client or at the time he rented it, correct? Correct. Okay, but that seems disconnected to me from the argument that you presented to the district court. It's very clear in your appellate briefs, but in the district court, when I looked, I went back and looked at your summary judgment briefs, okay, what you were arguing is that Home Depot's material breach of the contract was by providing Mr. Calvin with the wrong machine, okay? And so that disconnect seems significant to me because it raises a bit of a waiver question or a lot of a waiver question. I understand the question, Your Honor, and I agree the focus of the argument in responding to the summary judgment motion was whether the machine identified in the contract was what was provided to Mr. Horn, but I agree it wasn't fleshed out as clearly as it has been on appeal. And is there any evidence, counsel, as to at the time of the return of the machine, I gather Mr. Horn was injured getting attention and a friend returned the machine to Home Depot. Yes. Is there any indication, did the friend report that there had been an accident or that there was a problem with the cable or anything like that? Your Honor, no, I do not believe the friend did. However, Mr. Horn's wife did return to Home Depot. This is in the record. She was deposed and she did return to Home Depot the day after the accident because they were still experiencing their urgent ongoing plumbing issue and they had hired a roto-rooter to drain their line and they needed a part to help assist with that. And when she was at Home Depot that day, she did notify them that there had been an injury. You know, Mr. Horn's biggest problem, I believe, is the broad public-sculptory clause in the contract combined with the provision limiting damages for breach. If the court finds that those provisions do not violate public policy, what would remain of any remedies for negligence? Well, Your Honor, first I would argue that Paragraph 3, which is the contractual damages provision, does not apply to any plaintiff's claims. He doesn't assert breach of contract, so I don't think that those provisions limit any of his claims. But for the broader release and exculpatory provisions, even if you don't find that they violate public policy, you still do have the job of deciding whether this contract, this specific contract, should be enforced as written. And the first step in that is to look at these very contradictory provisions. The very first paragraph of the contract is the one paragraph where Home Depot clearly assumes an obligation, which is to provide the equipment in good working condition. And then later, Home Depot purports to relieve itself of that obligation completely. And if you analyze the case under Illinois law, which I assume you would since we've argued Illinois law and nobody disputes that that's the law that applies, I think the case is a very illustrative case, and it talks about a lease for safety deposit boxes wherein the landlord promised to exercise ordinary care to prevent the unauthorized opening of safety deposit boxes, but then later in the paragraph purports to relieve itself of all liability for any of its breaches, negligence, breach of contract. And the court there said you could not promise to do one thing in the contract and elsewhere basically disclaim your obligation to perform that obligation under your contract. And we contend that that's the exact same situation here. Home Depot expressly promised to provide a machine in good working condition, and then later says we are exculpated and released from any liability, including for breach of contract or breach of warranty. But the district court addressed that, right? The district court said, no, no, no, they're not. If in that scenario there was hypothetically a machine not in good working order, there's a remedy. You can get an adjustment to the rental fee, or you can get specific performance and get a new machine. Correct, Your Honor. So it's not, what's the case called, jeweler shop or jeweler's whatever? Jeweler's mutual. Yeah. In that situation, one provision completely canceled another, but I thought the district court in the contractual analysis here, which seemed right to me, said, no, you don't have a complete cancellation situation. Well, but Your Honor, that's true if the only damages sought are contract damages, but it doesn't address, you know, providing a machine in good working condition here is very different than in the jeweler's mutual case, because the only damages could be financial damages, monetary damages. Here, not providing a machine in good working condition could cause breach of contract or warranty damages, but it could also cause personal injury. And this circles us back to, it's not the argument you made below, though. You made the argument below on the contractual breach in terms of wrong machine. Well, Your Honor, I think the attempt was to say the machine also was not this two-month-old machine and wasn't in good condition, and there was quite a bit of... It wasn't also. I mean, I've got your brief right in front of me. I mean, this is something I looked pretty hard at. Nowhere do I see a reference to trying to push back on the exculpatory clause for failure to provide a machine in good working order, which is not what you argued. What you argued was it was the wrong drain cleaner. I think the attempt was to say it was the wrong drain cleaner, and there was a lot of evidence produced about how the condition of the drain cleaner was not what one would expect of a two-month-old drain cleaner, and its condition overall was a very hotly disputed fact issue. And, I mean, that's, I think that's one criticism, though, of the district court's decision that we have, is that to enforce the exculpatory provisions, the district court necessarily should evaluate whether, okay, it's an affirmative matter, it's an affirmative defense on which Home Depot bears the burden of persuasion, it's a summary judgment proceeding on which Home Depot bears the burden of persuasion. We're not suing for breach of contract in this context. Breach of warranty, I agree, is sort of another claim, but we're talking, let's just say strictly the negligence claims. The court, before it allows Home Depot to prevail on an affirmative defense to our tort claims, should be required to establish that it itself is entitled to enforce the provisions of the contract, meaning it did not materially breach the contract. The problem I have with that argument, counsel, is that that would seem to nullify any contractual provisions having to do with limitations of remedy, even much more reasonable ones than this one, right? I don't think so, Your Honor, because in a lot of, most of the cases actually that have exculpatory provisions like this, you don't find promises by the contract makers. Say the gym membership cases, things like that, you don't see language wherein the party who created the contract made an express promise to do something, or to do something, the cases that are on point, which is the Jewelers Mutual and the Shore Paper Products case, in those two cases, the parties make a promise to exercise ordinary care or to perform their work in a workman-like manner. So in those cases, the courts do find, if you then try to get out of those promises, those two provisions conflict and you can't do it. No, we're not quite connecting. Let's assume a much more reasonable limitation of damages rather than complete exculpation, okay? Just a no consequential damages argument in, let's say, a delivery contract. The assumption is that that will apply only if there has been a breach, right? Not necessarily a breach because we don't know. Failure to deliver as promised, okay?  There's a limitation of damages provision that says you get your money back, but if the widget causes the factory to shut, the lack of the widget causes the factory to shut down for a week, you don't get millions of dollars in damages and consequential damages, right? But it assumes a breach. So the fact that there's a breach of the contract doesn't mean the exculpatory clause can't be applied or that the limitation of damages can't be applied. That's the problem I'm having with your argument. Well, but, Your Honor, I think that in the tort context, it does make a difference. And maybe we just focus on the procedural aspect, which is this is affirmative matter that, A, Home Depot never pled, never once pled this as an affirmative defense. So A, it could be deemed to have waived the right to raise it on summary judgment. But, B, even if it had pled it, let's say it was sufficiently raised in its summary judgment motion, it had the burden of proof. And if you're going, I mean, Home Depot's argument wasn't that plaintiff can't meet or provide evidence of the four elements of his negligence claim. This defense is completely outside of his negligence claim, and it's seeking to enforce a contract against Mr. Horn. I take it that procedural argument was not raised in the district court, was it? It was definitely in the Rule 59 motion, and I think that's... I mean, before district court issues a decision on the merits. I don't know that it was expressly raised as a violation of Rule 8. Okay. On the claim against Electric Eel, on page 38 of the response brief, in the last paragraph, the defendants list evidence needed to make out the negligent manufacturing claim. Where in the record will we find evidence supporting this claim? Your Honor, if you'd give me a moment to find that page, I will address your question. Your Honor, I see that page as saying plaintiff's failure to disclose an expert. Is that the last paragraph? Does it begin there? I do not have it in front of me, unfortunately. I just have notes. Okay. I'll just go generally to what I know Electric Eel has claimed the plaintiff has to present, which is we have presented evidence of how the machine functioned on the day the plaintiff rented it. The only evidence Home Depot provided was evidence of its practices and procedures regarding inspections, which notably, not only did Home Depot spoliate the machine at issue, it also discarded, contrary to its own written procedures, it discarded every inspection tag, service tag, and every tag that it said it uses to demonstrate that its machines have been inspected and cleaned. So they not only spoliated the machine, but they spoliated their own evidence of when it was inspected, when it was cleaned. So the only evidence we have as to the condition of the machine on that day was the three occurrence witnesses who testified to a significant problem with the machine. So the evidence would be the three witnesses who testified that the machine came out with a kink in it, but not only that, the plaintiff testified that when he went to reverse the snake out of the drain, the foot pedal malfunctioned. There was no pressure coming to pull the snake out of the drain, and that the reverse toggle also didn't work. So he could not reverse the snake out of the drain. And when he attempted manually, which is exactly provided for in the instructions, when he attempted to manually retrieve it, that's when it missed. When you say only evidence, I have a memory that didn't the Home Depot employees talk about not just their standard practices, but no indication that they didn't occur on this particular day? Because I think it goes to Judge Hamilton's question about the injury being reported a bit. I wouldn't expect a Home Depot rental office person to remember what happened with each machine kind of coming and going. I mean, this is going on all day long, right? And, you know, very, very many number of rental transactions, I would presume. But didn't they offer testimony, didn't they, about what they do to get machines ready? And some guy named Davis or something testified about what he does when machines come back? Yes, they testified about their practices. But you're right, none of them specifically recalled what they did with this particular machine, which is why Home Depot's discarding, suspicious discarding of all the service tags, all the customer tags, all the inspection tags that are supposed to be signed off on by Home Depot employees is hugely problematic. All of their claim of practices can't be established by any of the tags that they claim they used, that they're written procedures. Was that within the terms of your exploitation claim? I thought it was that the machine went missing, not machine and paperwork. Yes, and paperwork. And notably, Your Honor, there was a report generated, a repair order generated by Home Depot on August 18th. So this is after the preservation letter is issued. It's the day after Home Depot's claims manager sent notice to Home Depot to pull this machine and preserve it. The day after they got that message, there was a repair order put in for this machine. And then it said the repair was completed in November. So there's hugely suspect activity that happened with this machine. And you're correct. There are no witnesses who have independent memories of what they did. And the only employee who did testify, Phil Veranda, testified that he had inspected the machine pursuant to his normal procedures two weeks before plaintiff rented it. And then there was no evidence of activity until the plaintiff rented it. But suffice it to say, I mean, the evidence of the condition of the machine that day after the last inspection of it was over two weeks prior is not established by Home Depot. And they lost all their tags and inspection reports. And the testimony was in dispute regarding whether or not Home Depot demonstrated the machine in front of plaintiff that day. They claim they did. He claims they didn't. And they also inconsistently say he refused to have a demonstration. So there was a big fact dispute about whether or not they demonstrated it that day and if it really worked that day. But it is notable that the third or fourth day after Home Depot received this machine from Electric Eel, the manufacturer, a foot pedal had a defect. And rather than sending it back to Electric Eel, which its contract with Home Depot says it's supposed to do, Home Depot chose to repair the foot pedal themselves. So lo and behold, two months later, plaintiff gets injured claiming that the foot pedal doesn't work. I see my time is up. Your time is up. I'll give you a minute for rebuttal. So Mr. Schroeder. May it please the court, David Schroeder for the appellees, Home Depot and Electric Eel. I think our brief was very comprehensive on all of the issues presented in this case, but there were just a few points that I wanted to address that were raised in the reply brief filed by the appellant that obviously we didn't get a chance to address until today. First, there is absolutely. Before you do that plea, paragraph one of the contract limits damages for Home Depot's breach to paragraph nine says that the plaintiff can recover no damages for breach. How can these contradictory provisions be reconciled? The way they're reconciled is that under Illinois law, the more specific provision is given precedence over the more general. So in the situation for paragraph three, which limits the remedy for a defect in the machine to either replacing the machine or getting your rental price back, that provision would take precedence over the more general provision in paragraph nine that you're referring to. Paragraph three applies to any failure to meet any of its obligations under the agreement, correct? Correct. How is that more specific? Well, that deals with our obligations to meet our obligations under the contract. There are other things like what happened here where the plaintiff was using the machine that led to his injury that would not be covered by that provision. So therefore, I think paragraph nine is broader than paragraph three. You know, paragraph one of the contract states that Home Depot will provide the machine in good working order. Paragraph eight states that the renter accepts the machine as is, with all faults. So I take it that you think we have to reconcile these seemingly contradictory provisions as well. Well, first of all, I don't think you get to that issue on the record before you. Indulge us. Okay. So on the record before you, the argument that they made was not that the machine was not in good working order. It was that they got the wrong machine. Well, actually, okay. The district court seemed to conclude that Horn was changing his argument from wrong machine to defective machine. I read his summary judgment response as essentially saying that the wrong machine had three very specific defects. If we find that he preserved the defective machine argument, how does that change your argument? So in other words, if he had argued in response to our motion, not that he got the wrong machine, but the machine he got was not in good working condition. Well, he argued both. Well, actually, he didn't argue both. He only argued that he got the wrong machine before the district court. With three very specific defects. No, they didn't make that argument before the district court. They made that argument in their rule 59 motion, where they then argued, no, that's not what we were saying. It was a machine that wasn't in good working condition, and here are all the problems with the machine. Well, I guess I read the summary judgment response differently. And we'll, of course, go back and look again. I obviously read them carefully because that was one of the big issues that we raised in our response brief was that the issue that they were raising Here's the sentence, at least a sentence from their brief, not the rule 59, but the rule summary judgment motion. Quote, Home Depot failed to deliver on its promise to Calvin that the drain cleaner would be in good working condition. Is that not sufficiently clear? That's from their brief? Yes. They made that argument in response to another argument. What's their list of disputed facts? Right. But they didn't use that in their response to the motion. They made the argument that it was the wrong machine. It wasn't an electric eel model R that he was given. It was only later with respect to the breach of warranty argument where he tried to make the argument he didn't give us a machine in good working condition. Could we circle back to Judge Rovers' questions here? Could we circle back to your question here? Look, he asserted that the wrong machine was defective in specific ways. One, it had a preexisting kink in the cable. Two, the reverse toggle switch did not work. Three, the foot pedal did not work. I don't know how much more could be said about it being defective in specific ways. Okay, so if he was arguing that the machine was not in good working condition when he received it, then under Paragraph 3 of the contract his remedy was to return it for a refund or a new machine. Without one of his fingers. In Paragraph 3, would a dollar be sufficient to an adjustment for the, how much of an adjustment is appropriate or needed to comply with Paragraph 3? A dollar? Well, it would depend on what the nature of. Whose choice is it? It's his choice, so he can have a new. About how much money he gets back? Well, it's his choice initially whether he wants a new machine or he wants a refund or a rebate. And then. At Home Depot's option? No, I believe it's at the. Should the Home Depot fail to meet any of its obligations under this agreement? I didn't bring my magnifying glass. Customer's only remedy is repair or replacement of deficient equipment or to receive at the Home Depot's option a rental charge adjustment. So could you opt for a dollar? So he has the option, as I read that provision, he has the option to have it repaired or replaced. Or at our option, we could give him a rental adjustment. Illinois law, by the way, appears to require that a party seeking to take advantage of an exculpatory clause must first demonstrate that it has performed its own obligations under the contract. Where in the record did Home Depot meet that obligation to demonstrate that it provided a machine in good working order as it says it will in paragraph one? I didn't see it in Home Depot's opening brief on summary judgment, which is, you know, record number 152. Right. So I don't believe that that issue was initially raised in the motion for summary judgment. The exculpatory clause was raised to say that it would apply here. Then in their response, plaintiffs said, you breached the contract by failing to give us the right machine and therefore you're not entitled to enforce the exculpatory clause because you breached the contract. And our response to that was that you admitted that this was the machine you got by pleading it in your complaint and by admitting that it was an electric eel model R in our statement of material fact. So that argument that they didn't get a machine in good working condition was never made to the district court. It was that they got the wrong machine, and we responded to that by saying, you admitted that this was the right machine in two different ways. Mr. Schroeder, let me ask you a hypothetical. I don't want to talk at all about the facts of this case. So don't respond by saying this is what happened here or not what happened here. Let's suppose that an individual comes into Home Depot and rents a power sprayer. For painting? Spray off the driveway in the spring. And let's suppose that the manager of the rental office agrees and testifies under oath that the rental sprayer was not in good working order. We knew it and we rented it, and that's as clear as day in the transcript. And the renter is then hurt in the driveway, badly hurt, because it's not in good working order. Okay. Analyze that as a legal matter for me vis-à-vis the exculpatory clause. How does that work or not work? Well, initially he would be entitled to his remedy under paragraph three. Which is Judge Hamilton's, you know, a new machine. You know, he's saying, look, I'm not worried about a new machine. I'm worried about I lost my finger or something serious. And then if you turn to paragraph nine, unless there would be an argument of... But would you, I guess what I'm trying to say is, would you say, based upon the analysis you offer here, the exculpatory clause eliminates tort liability? Correct. Notwithstanding that the rental office manager testified. We knew it was in poor working order and we rented it. It would certainly be a much stronger argument for the plaintiff in that situation than the contract would be. I would imagine so. And that... So doesn't that raise some serious questions about the scope and reach of the exculpatory clause vis-à-vis the operation of other provisions in the contract? Again, I think under Illinois law it's clear that the more specific provision prevails. And absent the fact situation that you... Well, so if you want to go down that road, the problem I have is that number, paragraph number one, as Judge Rovner has pointed out, is pretty specific. Supply a machine in good working order. Correct. I mean, it's not ambiguous. Correct. And of course our position is that we did give him a machine in good working order. No, no, no. That's my hypothetical, not the case. In your hypothetical... So that's the difficulty that I had with the whole specific governance general, et cetera, et cetera. I mean, I follow it just fine. But we can hypothesize a set of facts that I think get really difficult here. Because the guy that had his arm amputated and has sworn testimony that the machine was not in good working order, he doesn't want a rental fee adjustment. Well, I would say that then under that hypothetical, going back to black-letter contract law, if you breach the contract, you can't enforce other provisions of it. So under your hypothetical, the Provision 1 was breached, and therefore the other provisions are not enforceable by Home Depot. So if he can prove a breach of Paragraph 1, the others are not enforceable? Mr. Horne can prove a breach of Paragraph 1? If he can prove breach of Paragraph 1, then Paragraph 9 would be unenforceable. Well, is it? And I don't mean to kind of play lawyer and get picky with words here, all right? But is it prove or create a jury trial issue, create a material question of fact? Well, for summary judgment, it would be if he creates a material question of fact, then summary judgment could not be granted. And I would expect when you sit down and Ms. Bartolucci comes back up, she'll say, that's what we have here. And my response would be that they don't because that's not what they argued. They argued that they got the wrong machine. Right. Then we circle back to that. And it's really their argument that's circular because they say, well, we can't prove that it was the wrong machine because you lost it. But the way they – I mean, these were the decisions that they made. They decided to make – to draft their complaint to say that they got an electric yield model R and that the plaintiff was injured. And in response to the motion for summary judgment where we said the exculpatory clause applies, their argument was you breached it because you gave us the wrong machine. And we said, no, you admitted that twice, that it was the right machine, and therefore we didn't breach according to your theory and therefore you have not raised a defense to the exculpatory clause. Then they turned around on the Rule 59 motion and tried to argue that that's not what we meant. We meant we didn't get a machine in good working condition. And the one other thing that I want to say about that issue, since we're getting into a lot of facts here, is that there's one fact that they completely ignore, and that is that – or the series of events on this particular machine. It was rented once. The foot pedal was replaced. It was rented 23 more times without incident. It's rented to the plaintiff who has this incident, but it's returned to us with no mention to us that a finger was lost or that there was a problem. We clean it, we get it ready, and it's rented again after. I understand. What about the evidence concerning Mr. Horne's wife returning? Again, none of this is before the court, but on the record, all she did was come back and ask for a part. She did not mention to anybody that there was an incident with the machine. Hold on. We heard something different, I thought. We'll ask about this in rebuttal. Are we talking about deposition testimony here? Well, I didn't know that they were going to make this argument. That's why we have oral arguments. Right. I would have to find that in the record, but I think we can find it in the record. Did the spouse testify? Was she deposed? Yes, she was deposed. All right, so the answer probably lies in there. Okay. But I don't think her deposition transcript was attached to anything, so we'd have to go back and find it. Did the defense offer an expert opinion about the machine in this case? Yes, we had an expert. And did that expert express an opinion that the machine was in good working condition? Yes. On what basis? On the basis that looking at an exemplar model and the facts in the case about the number of rentals, the fact that it was rented to the plaintiff and then it was rented again, and the plaintiff's description of how the accident happened, he was able to conclude that there was nothing wrong with the machine, that the way this accident had to have happened was through user mistake. Given that he could not inspect the machine, how is that anything but guesswork? Well, I think, again, the key fact here is that it was rented so many times without incident, this happened, and then it was rented again without incident. If a cable is kinked and causes a problem, does it have to be replaced or can it be repaired? It would depend on the kink, but usually it's replaced. And there is another fact. But it could be repaired? It might be unkinkable. Do we know? Well, could it be repaired? Under certain circumstances, I believe it can be repaired. And do we know whether that happened here? In this case, we know that it did not happen. How do we know that, given the missing records and? Because the Home Deep, Mr. Davis, who received the machine, testified that had a kink been found in it, he would have been required to note that and charge the customer $230 for replacing the cable, and that did not happen in this case. And, again, it was rented one more time after this without a kink in the cable. And what was the repair order for it? The repair order was to replace the foot pedal after it was rented the first time. No, no, no, no, no. The one that plaintiff's counsel referred to after the claims manager was called into the case? I'm not sure that there's anything on the record as to what that repair order was. Okay. You're saying, though, I want to make sure I understand that I heard you right. You're saying when this, what's his name, Davis, the worker? If Davis would have found that the line was bent or kinked or whatever, that the standard practice would have meant an upcharge on the rental. Correct. Because the upcharge didn't occur, that's what you base that on. Not a specific recollection, but just standard practice is what it is. Correct. And as you pointed out, that had he been told when the machine was returned, by the way, the guy who used this lost half a finger or is in the hospital right now, that might have been something that he would have remembered, but it was returned without any comment. Can I ask one more question? Please, General. I don't mean to take a, this is literally intended as a 30-second question. What in the world happened to the machine? I mean, don't you all quarantine this stuff? When somebody calls in and says somebody got badly hurt here, they lost a finger. Sure. So what happened is that the machine was segregated. It had a tag put on it. It was in a facility where it was locked. And then the plaintiff didn't ask for it for at least six months. And at the point where they then, the plaintiff's counsel did ask for it, we went and looked for it, and it was not there. They assume it was stolen. It could have been stolen. All we know is that it wasn't where it was supposed to be when we segregated it. Okay. Thank you, Mr. Schroeder. Rebuttal. One minute. General, I just want to clarify, plaintiff's counsel did request the machine within five days of the accident. That is the date of the preservation letter. It was July 26th. So he did not wait six months. He sent a preservation letter five days after the accident that was acknowledged a month after the accident. And as I mentioned, the next day after the claims administrator told Home Depot to segregate it, some mystery repair order was put out for the machine. Did Mr. Horn's wife testify in her deposition that she reported the accident? She did, Your Honor. And a Home Depot employee, John Baranski, created an incident report for Home Depot. And is this in the deposition transcript? I don't know if his report is, but, yes, they both testified to her coming into the store the next day. And she did mention that someone had been injured. The last point is the important one, right? He's not contesting she went to the store. Oh, no. And she mentioned that her husband had been injured, and Mr. Baranski has prepared a written report that is in the record. If you'd like me to submit a supplemental memo identifying where in the record that is, I would. I think it would be helpful for both sides to provide such a letter within 10 days of the argument. Okay. Well, let's say Monday, a week from Monday. Okay? With any additional record citations you wish to provide based on questions raised in the arguments. Okay? Yes. Thank you, Your Honor. Anything else? I just want to go to Justice Gutter's comments, which, yes, I think that the issue here is if Home Depot contends it did not breach the contract, it is contending that Paragraphs 7 and 9 eliminate all potential tort liability. And I do think that has significant policy concerns, because it will end up in the situation where customers will have fewer protections than if they had bought the machine from Home Depot. And it shouldn't be that way, because Home Depot actually has exclusive control over the machine or its customers, other customers, have exclusive control over that machine at periods of time. So why in the world does it make sense in a product situation for a customer to have fewer protections than if he had actually bought the machine when, in fact, that machine is being handed out and handled by dozens of other people? Okay. I think we have your point. Thank you. Thanks to both counsel. The case is taken under advisement. The court will take a ten-minute recess. Thank you.